We'll take up Rindlisbacher v. Steinway. Good afternoon. My name is Lane Morrell, representing Rindlisbacher. I'd like to reserve four minutes for rebuttal, and I will monitor that. Genuine issues of material fact preclude summary judgment on statute of limitations and on confidential relation. On statute of limitations, the district court's narrative suggests that Rindlisbacher did not act with reasonable care and diligence to discover Steinway's fraud or to investigate Snyder's statements for fraud, but opposing evidence suggests otherwise. I offer four examples of many addressed in the briefs. First, the court suggests Rindlisbacher acted unreasonably by failing to ask relevant questions, but the court failed to acknowledge that on September 22nd, 2010, Snyder told Rindlisbacher he knew the Phoenix market well. Rindlisbacher asked Snyder questions about it, and Snyder's deceptive statements came in direct response to a specific question from Rindlisbacher. Also, the court failed to acknowledge evidence leading Mr. Rindlisbacher to believe Mr. Snyder, and that was their four years working together in Spokane, and the fact that Steinway's statements about reasonable sales expectations for Spokane had proved correct. I think the most troubling piece of evidence on this issue is the January 30, 2014, email where Rindlisbacher predicted only 26, or Snyder predicted only 26, not 45, piano sales, which hadn't been sold in the Phoenix market for a very long time. Doesn't that show that he was at least on notice to investigate at that time? Your Honor, I believe a jury could infer that, but a jury could also make a contrary inference because Rindlisbacher testified that he did not have knowledge of the amount of prior sales. Local employees of the prior Phoenix dealer testified that they had not given him that before April 12, 2015, and Rindlisbacher testified to an alternative explanation of the email, which was supported by a dozen contemporaneous documents. Even though he may be a businessman with 40 years in retail, a reasonable jury could choose to believe Rindlisbacher's explanation based on their observation of his demeanor and the demeanor of Mr. Snyder. What is the explanation, just that this was a hasty email? It was hasty, and during the month of January, tension had been accumulating between Mr. Snyder and Mr. Rindlisbacher because of Mr. Snyder's actions and statements, and that Rindlisbacher was buried in business matters that had to be attended to, and he didn't have the time to deal with issues of this type, and he just dashed off a response and that he didn't know what the actual sales information was. It doesn't read like a dashed off email, though. I mean, it's a fairly detailed email, and the email obviously isn't the only piece of this. There are the comments in the news, the fact that he's obviously observing the sales data, there's the fact that he, as you mentioned, has decades of experience in this line of work and so has some knowledge of piano sales, so it's a bit hard to understand why he wouldn't have been on notice much earlier. The last point I want to make on this before moving on to the next issue, Your Honor, is that the court stated that Rindlisbacher could have discovered Steinway sales to prior dealers simply by asking Mr. Geiger, the manager of the prior dealer, like he did three years later in 2017, but the court disregarded uncontroverted testimony to the contrary. Rindlisbacher testified that piano dealers customarily view recent years unit sales data as confidential and they don't disclose it to other people. Mr. Geiger confirmed the confidentiality custom, testifying that had Rindlisbacher asked in 2010 or 2013, Geiger would not have disclosed the prior dealer sales information. The confidentiality custom confirmed by both Rindlisbacher and Geiger and not controverted by Steinway could lead a reasonable jury to conclude that the failure to ask Geiger for prior dealer sales data sooner was reasonably justified because he had no expectation that he could get that information from Mr. Geiger. So, we believe that if the court reviews all the evidence in the light most favorable Rindlisbacher, a reasonable jury could conclude that further investigation of Snyder's comments was not reasonably justified. On confidential relation, the Tager case is key. The district court failed to recognize it's important legally or factually. Contrary to the district court's holding, Tager held that a jury could find a confidential relation in the business context, even though Catholic social services had not agreed to act as a fiduciary. The district court improperly discounted the Arizona Supreme Court's decision in Mr. Donut, saying it involved a franchise while our case does not. But in combination, the Steinway and Sons dealer agreement and the trademark license agreement are akin to a franchise. The franchise in Mr. Donut created a special relation because of the franchisor's contractual controls over the franchisee's business. The four factors for determining confidential relation are supported by evidence here. First is superiority of position. As between Steinway and Rindlisbacher, Steinway clearly has superiority of position. The issue of superior knowledge. Snyder for Steinway had a database containing 30 years history of Steinway sales to prior Phoenix dealers. Rindlisbacher had no access to that. Rindlisbacher lacked reasonable access to sales data from prior dealers because of the confidentiality customarily accord to that information. A reasonable jury could conclude that Steinway had superior knowledge of these undisclosed material facts. Counsel, you mentioned earlier one of the factors, and it seems to me the primary factor should be the contractual relation. And how do you get around the fact that the client was an independent contractor only? Because this state law determination is not dependent upon the existence of an agency relationship. The cases that we cited indicate that anything akin to a business agency can give rise to a confidential relation. So you could have a confidential relation between an employer and an independent contractor? Yes, you could if the four factors that are relevant to determine a confidential relation were satisfied as we believe they are here. The third factor is substitution of will. And Rindlisbacher had to rely solely on Steinway's will to disclose the prior dealer sales information because he did not have access to it from Steinway or from the prior dealer before January of 2014. The Steinway agreements do give Steinway contractual controls over Rindlisbacher's business, allowing it to substitute its will for Rindlisbacher's on major business decisions such as change of location, layout of store, appearance of store, product lines, etc. And the fourth factor is conduct inducing relaxation of ordinary vigilance. The record contains dozens of Steinway communications with dealers over six years, attesting to a close dealer relation using terms like partnership and family and stating Steinway's core value is to treat each other as family through honesty and integrity. Right, but this is very difficult to see how this amounts to a confidential or trust, you know, trusting type relationship. This is a business relationship. Two parties on both sides are fairly sophisticated. Your client is a fairly sophisticated business person, too. I mean, just calling somebody part of the Steinway family, I don't think it creates the kind of relationship that you're trying to get here. Well, the court in Tager held that it did. The court in Tager looked at a document maintained by Catholic Social Services that said that we act as a partnership with the adoptive parents in acting in the best interest of the child. That partnership reference, the court held, gives rise to an inference that Catholic Social Service was attempting to induce relaxation of ordinary vigilance. And the same inference could be drawn by a jury from this evidence. You have five minutes. I did want to get your perspective on the attorney's fees issue because that itself, there's a lot of value, monetary value on that issue, and I know you've appealed that as well. Yes, I'm happy to shift to that, Your Honor. There is a third issue that I'll come back to if I have time. But the district court, what it did was apply a substantive Arizona fee-shifting statute when the parties had agreed that New York's substantive law governed their contract. Now, there are two Arizona Supreme Court cases, Cardin and Swenson, and both of those require evaluation of an agreement's choice of law provision under Restatement Section 187.1. You have to do that. That is how you determine whether the chosen state's law establishes rights and liabilities of the parties on a particular issue not specifically addressed in the agreement. The district court failed to perform the mandatory Section 187.1 analysis. When the analysis is performed, Arizona law allows the parties to resolve by an explicit provision whether fee-shifting is authorized on claims arising out of the agreement, whether in contract or in tort. So under Section 187.1, New York law must be applied on the question of fee-shifting. Well, I mean, that's the question. I think the first part of what you said is correct. And so then you got to look at the contract. But the contract is one of those narrower choice of law provisions. It doesn't say that any claim between the parties is one that is governed by New York law. It says this agreement. So how do you address the cases that have ensued that type of provision and have read it more narrowly not to include tort claims? We're not dealing with tort claims here, Your Honor. What we're dealing with is what is the what are the rights and liabilities of the parties under a contract. And Section 187.1 of the restatement says you have to determine what those rights and liabilities are by asking yourself by applying the 187.1 analysis, which tells you whether the contract creates rights and liabilities of the parties on an issue that's not expressly dealt with in the contract. This issue was not expressly dealt with in the contract, but it could have been. Therefore, Section 187.1 requires that you apply New York law to determine whether fee-shifting will be allowed. And under New York law, fee-shifting is not allowed. I'll reserve the rest of my time. May it please the Court? Thank you, Counsel. Yes, Mr. Samuels, go ahead. Thank you. Bruce Samuels and Papadia Samuels Weiss on behalf of Steinway. This case, there's two different appeals as the Court has recognized, one of which deals with the most summary judgment ruling, one of which deals with the fee application. And both sets of rulings should be affirmed by this Court. On the most or summary judgment ruling, which I'll address first, the underlying Court issued a very thorough, well-reasoned 46-page opinion granting summary judgment on four independent grounds. The Court should affirm on all grounds, but if the Court affirms on any of the grounds, the case should remain dismissed as each of the grounds is case terminating. I'm most concerned about the attorney's fees and the scope of the governing law provision in the contracts, because originally, although there were two contract claims in this case, and the breach of contract claim would most certainly have invoked the New York law. Correct. The breach of contract claim was dismissed at the 12B6 stage and was governed by New York law and was determined, the District Court determined that the statute of limitations was blown in that situation as well and dismissed the case under New York statute of limitations grounds at the very early part of this case. And we did not seek fees relating to that issue. The great, vast majority of the fees in this case were incurred by defending the tort claims, which were always litigated by plaintiff and Steinway as tort claims arising under Arizona law and arising under contract as well. The way this case was pled from the very beginning. Counselor, can you clarify, do you mean that you didn't seek fees up to through the 12B6 stage or you just tried to separate out the two claims and the two tort claims and then contract claim? Well, so two points to that question. We applied for a little over a million dollars in fees. Even that amount was discounted from what we originally billed Steinway. We did discount some of our fees from what we applied for with the understanding that there might need to be some allocation for defending these breach of contract case, which was a very simple issue to resolve compared to the rest of these issues. And the court took our million dollar plus fee application and reduced it down to $829,000 for a variety of reasons. And we're not appealing the discount. You're also saying just to make sure I understand that the million, the amount you requested, the around million dollars did not even include the contract related fees, the breach of contract related attorneys fees. You didn't even apply for those. We tried to differentiate as best we could. These were briefs that were dealing with numerous causes of action that were originally constructive fraud, fraudulent omission and breach of contract. All those issues were briefed in the same motion to dismiss. And given that there's a million dollar fee application, there was a discounted fee of $829,000. And again, even the million dollar fee application was discounted from what we incurred, what Steinway incurred with our firm, my prior firm. So, that's what I don't understand. So, you basically, you're dealing with this motion, this 12B6 motion to dismiss, and you're dealing with all three issues at once. How were you able to separate out what was related to the breach of contract versus what was related to the tort claims? Well, we just basically did our, you know, we went through and we discounted our fees by, I can't remember what the percentage was, but there was a discount from the total, understanding that, again, the fee issue relating to the breach of contract claim was fairly nominal compared to the total. And the vast majority of the effort in this case was defending depositions in four different states, lots of discovery disputes, lots of fraudulent 10 or 12 discovery disputes, which Steinway prevailed on 95% of, flying around the country, dealing with motion practice. So, this case got very expensive. Was that after the 12B6 stage or before? Yes, after the 12B6 stage. No discovery, no, all that occurred before the 12B6 stage was document production. All the depositions and the bulk of the, well, all the depositions and the took place after the 12B6 stage. In fact, the case was stayed for many months after the 12B6 motions were filed, because at the time, the Arizona District Court had this disclosure requirement, which has since been rescinded. But we asked that the case be stayed so that the court could determine the issues. And if they were dismissed, at which time we wouldn't have to incur additional expense. Counsel, what's wrong with excluding any fees from the 12B6 stage and before? Because at that point, there was a contract claim, which seems like it would have invoked the choice of loss provision in the contracts. Well, the reason why excluding all that time is not appropriate, because there was also a fraud claim, which we were successful in getting dismissed as well. The allegation was that Steinway had made affirmative misrepresentations, and the court determined that sales goals are not affirmative misrepresentations. They are statements of potential future performance. So the fraud claim was just, so we were successful in getting one of these significant counts dismissed on the tort side. I'm sorry, Judge. No, I just, in my head, it's hard to see how you could disentangle those claims. You're litigating them all together. And so the fact that you're litigating one contract claim and in addition a couple of tort claims, I guess the additional margin utility is much smaller, right? So it seems hard, unless you could prove definitively that some fees were related to contract versus some of the fees related to tort, it seems more appropriate just to exclude all these. Well, again, we were successful in getting the fraud count dismissed as well as the breach of contract count. So it was not as if it was a wasted effort by any means at the tort v. six stage. And I want to address a few more points that have been raised in Mr. Morrell's session. There was, he relies heavily on the Carden case, Carden versus Cotton Lane. It's a very, it's a one, it's a restatement 187 case, all right? And that's what he relies on. What he fails to mention, and this is really wonderful for Steinway, is that Carden, even though it applied restatement 187 and determined this, another state's law governs that dispute, awarded attorney's fees under ARS 12-34101. It's on the last page in the last sentence of the decision. It's 173 Arizona at 210. So Carden does not support Mr. Morrell's position. To the contrary, it supports Steinway's position that even when you have a contract claim that's governed by a choice of law provision that says something other than Arizona, fees can be awarded under 12-34101. There's a, I mean, there's a little curiosity here where you're asking for fees for this because the contested action arose out of a contract, but at the same time, it sort of arose out of a contract to some extent, but not enough to make it governed by a provision that says this agreement shall be governed by New York law. So you essentially get the benefit of Arizona law without the burden, if you will, of the choice of law provision. And I was just simply pointing out that the Carden case does not help Mr. Morrell. It actually helps Steinway. This case was governed by tort law. These were tort claims, constructive fraud, and omission claims under Restatement Section 551 of torts. Those are the claims that were litigated through summary judgment, and those claims arose out of contract. What Mr. Morrell wants this court to rule would be contrary to a large number of Arizona cases that have determined that the ARS 12-34101 standard is a broad standard for arising out of contract. There are lots, I'm sorry. I think I recall this from perhaps your briefing, but at some point in this litigation, did you or your client tell the other side that you intended to seek fees under this Arizona provision? In other words, I think there were settlement discussions, which I don't want to inquire into, but I thought I saw this reference in the brief somewhere that actually there was a disclosure that you intended to seek these fees, perhaps as part of trying to negotiate a settlement. Correct. That happened in December of 2018. We put counsel on notice that as we were trying to get this case resolved, that we were going to seek fees, that under the Sienna case, which is an Arizona case, that fees were awardable, and that this fee-shifting provision is intended under the Arizona case law to require counsel and their clients in cases arising out of contract to evaluate their cases very carefully. And despite the fact that we put them on notice, they disregarded the case law, and they proceeded with requiring Steinway to incur over a million dollars in fees, defending these claims, ultimately getting a successful resolution on all the claims. And the language of the statute is real important. It says that 12-341-01 fee-shifting is intended, this is explicitly, it says should be made to mitigate the burden of the expense of litigation to establish a just claim or just defense. That's what the Arizona legislature passed, and that's what the court, district court below, held, was that Steinway was entitled to fees because his case rose out of contract. And tort claims can, of course, arise out of contract. There's no question here that these claims arose out of the contract as pled by plaintiffs. Under the Atkins v. Calypso case, fees were awarded by Judge Neil Vincent Wake, and the choice of law in that case was California. But these were, there were tort claims, and the court awarded tort claim attorney's fees that arose out of contract. In the Marcus v. Fox case, which is an Arizona Supreme Court case, again, the case arose out of contract, but it was a fraudulent inducement case, and the court awarded fees there. And in the Carothers v. Underhill case, which is 230 Arizona at 513, the Court of Appeals held that the omission claim was a claim that arose out of contract. That's what we have here, an omission claim and awarded fees. So fees are clearly awardable in this type of case. Surely with the discretion of the court, and the discretion of the court was exercised by the district court here to award fees to Steinway of a discounted amount and should be upheld. I also want to point out another important case, which is Jordan v. Bergbacher, it's 180 Arizona 221, where the contract allowed recovery of fees for breach, but the court nonetheless held the under 12-340-101. And that's a 1994 case. So the cases in Arizona are replete with examples that allow for fee recovery. And Judge Liberti exercised the court's discretion in awarding fees in this case. The summary judgment ruling was thorough. It was well-founded. This is a situation where there was no guesswork about the January 30, 2014 email. And even if there was a lucky guess that eight years earlier that the sales goals had been achieved by the prior dealer, that's a remarkable guess if that was true. This court does not need to disregard objective evidence to deny a summary judgment. That's the Scott v. Harris standard where Judge Scalia declined to essentially acknowledge or allow the plaintiff to proceed in a case where the plaintiffs basically said the objective facts didn't really happen. And here Mr. Rindlisbacher saying, I didn't really say what I wrote, or I didn't really write what I wrote. And regardless of whether he was guessing or he was angry or he was upset or hasty, whatever the case may be, at minimum he was on inquiry notice. And inquiry notice in the Coronado development case is all that is required for that statute of limitations clock to start ticking. The reality is he was very satisfied in his own mind as a Steinway dealer, making $2 million in profit over the six plus years. And contemporaneous emails by Mr. Rindlisbacher to Steinway upon his termination said nothing about him being misled. He called it the BPI predictor. And he said that he didn't meet the BPI predictor over the past six plus years because there weren't enough Asians in Arizona. And there were too many Latinos in Arizona. And Latinos don't buy pianos. And he made similar statements. And he blamed the market. He blamed the market. And he blamed his own efforts and his own focus as to why he didn't meet the sales goals. He did not blame Steinway for misleading him about sales. So this is just a bunch of fiction that's been created in this case that the court was able to determine should basically look at the facts. There's substantial evidence supporting inquiry notice, statute of misdemeanor. Thank you very much. We will hear back from Mr. Moreau. Thank you, Your Honor. On the attorney's fees issue, one thing you did not hear from Steinway's counsel is any discussion of Section 187.1 of the restatement. That is because they have no answer to it. They did not perform a Section 187.1 analysis. Their briefing doesn't say anything about it. The court in the Swanson case, as well as the Cardin case, indicated that it is mandatory. And where a contract does not expressly deal with a point, Section 187.1 requires that that gap be filled by the law of the chosen state if such a provision could have been agreed to through an express provision of the agreement. Arizona law allows the parties to say in their contract whether claims arising out of an agreement, whether those claims are tort claims or contract claims, to say in the agreement whether there will be fee shifting or not. Because that is allowed under Arizona law, Section 187.1 requires application of New York law. Under New York law, that issue must, that issue is that no fee shifting is allowed. There's no statute in New York. There's no rule there. And the contract that we have here allows fee shifting only in a Steinway trademark action, not in other actions arising out of the agreement. The district court said because Arizona law governs the tort claims, we're going to use Arizona law for fee shifting. The Arno case in the Ninth Circuit expressly rejects that reasoning, saying that there is no support for that argument whatsoever. Section 145 of the restatement does not apply here. It applies only to an issue in tort. And whether attorney's fees are recoverable is not an issue in tort. It is an issue in contract. And therefore, Section 145 cannot supply the rule that the plaintiff, that the defendant argues for. Thank you. All right. Thank you, counsel. Linda Spocker v. Steinway is submitted.
judges: WARDLAW, BRESS, BUMATAY